IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW A. I. UA CRUADHLAOICH, | No. C -12-02723(EDL) |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL** |
| v. | |
| PENNY S. PRITZKER, SECRETARY, U.S. DEPARTMENT OF COMMERCE, | |
| Defendant. | |

Plaintiff moves to compel further responses to eleven requests for production of documents. For the reasons set forth below, the Court grants in part and denies in part Plaintiff's motion. The Court orders Defendant to produce, no later than March 21, 2014: (1) a declaration confirming that the document titled "LCO 2719 Pleasanton," produced in response to Plaintiff's Request for Production No. 1 and attached to Plaintiff's motion to compel, is a list of the enumerators that worked in Crew Leader Crystal Korbas's crew during the Non Response Follow Up (NRFU) Operation of the 2010 Decennial Census; and (2) a complete list of the names of enumerators under the supervision of Crew Leader Crystal Korbas in 2010 who were in Plaintiff's crew. The Court denies Plaintiff's motion in all other respects.

Under the schedule adopted by the Court, Plaintiff's opposition to Defendant's motion for summary judgment would be due either seventeen days from a denial of Plaintiff's motion to compel, or on a date set by the Court after Defendant produces further responses if the Court grants or grants in part Plaintiff's motion to compel. Given that the Court grants in part Plaintiff's motion and that Defendant's further responses are due by March 21, 2014, the Court further orders that Plaintiff's opposition to Defendant's motion for summary judgment is due April 8, 2014, Defendant's reply is due April 15, 2014, and the Court will hold a hearing on the motion for

summary judgment on May 6, 2014, at 9:30 a.m., at which time the Court will set new pretrial conference and trial dates if necessary.

**I.    Background**

This case arises from Plaintiff's termination from the United States Census Bureau. Plaintiff is a dual Irish and U.S. citizen born in Connecticut. (Compl. 7; Pl.'s Dep. at 14, Cormier Decl. Ex. D.) Plaintiff applied to work for the Census Bureau on February 10, 2009. (Patterson Decl. ¶ 8; Compl. ¶ 5.) As part of his pre-employment background check, Plaintiff's name was sent to the FBI, and it tentatively matched two charges of assault and battery of a police officer and one charge of disturbing the peace. (Patterson Decl. ¶ 9.) In response to this development, Plaintiff submitted to the Census Hiring and Employment Check ("CHEC") Office his fingerprints and a criminal docket form indicating that he had been arrested on two charges of assault and battery of a police officer, one charge of disturbing the peace, and one charge of resisting arrest. (Patterson Decl. ¶¶ 11-12, Compl. ¶ 5.) According to Defendant, the CHEC Office interpreted this form as showing that Plaintiff had been placed on probation for assault and battery of a police officer. (Patterson Decl. ¶ 12.)

While this background check was pending, Plaintiff contacted the CHEC Office several times to follow up on the status of the investigation. (Compl. ¶ 7.) When Plaintiff asked why the process was taking so long, a CHEC staff member allegedly told him that "it's probably because of your long [expletive omitted] immigrant name." (Id.) Plaintiff informed the CHEC Office that he believed this statement was an illegal slur and expressed interest in the Equal Employment Opportunity ("EEO") process. (Id.) He also complained about the length of the background check process and said it was a waste of government resources. (Id.) Plaintiff filed a government waste report with the United States Government Accountability Office and informed the CHEC Office of the report. (Id.)

The CHEC Office eventually determined that under their applicable criminal background eligibility criteria, or "adjudication criteria," Plaintiff's apparent probation for assault and battery of a police officer did not bar him from employment because it ended more than seven years before he applied to the Census Bureau. (Patterson Decl. ¶¶ 15-17.) The CHEC Office cleared Plaintiff for

2

employment in August 2009, and Plaintiff was hired in April 2010 to work as an enumerator out of the Pleasanton, California Census office. (Patterson Decl. ¶¶ 15, 20, Compl. ¶ 3.)

Defendant conducted a second background check of Plaintiff after hiring him. (Patterson Decl. ¶ 21, Compl. ¶ 6.) According to Defendant, its eligibility criteria changed in January 2010 to impose a permanent ban on employing those who had been placed on probation for assault and battery at any time. (Patterson Decl. ¶ 19.) Defendant asserts that under this new eligibility criteria, Plaintiff was properly found ineligible for employment. (Patterson Decl. ¶ 22.) It is undisputed that Plaintiff was terminated on May 11, 2010. (Compl. ¶ 4.)

Plaintiff then filed an EEO complaint alleging that Defendant discriminated against him based on his national origin and retaliated against him based on protected EEO activity. (Compl. ¶ 8; Decision Without a Hearing at 3-4 ("ALJ Decision"), Dkt. 15-2.) The ALJ found that even assuming that Plaintiff's version of events were true, Defendant was entitled to summary disposition. because "while it appears highly likely that the Agency's Census Hiring and Employment (CHEC) Office misinterpreted [Plaintiff's] Criminal Docket form, there is no evidence that this error was made in bad faith, much less for discriminatory reasons." (ALJ Decision at 7.) Plaintiff was notified of his right to sue on February 27, 2012. (Ord., Dkt. 27.)

On May 25, 2012, Plaintiff, proceeding pro se, filed a complaint alleging discrimination, retaliation, defamation, and failure to comply with the California Labor Code. (Dkt. 1.) The District Court dismissed the defamation and California Labor Code claims with prejudice. (Dkt. 27.) After reassignment, this Court denied Plaintiff leave amend the complaint and struck Plaintiff's claim for punitive damages. (Dkt. 63.) On August 30, 2013, Plaintiff served Defendant by mail with his First Request for Production of Documents to Defendant. Defendant objected to Plaintiff's requests as untimely, and Plaintiff filed a motion to compel. While that motion was pending, Defendant moved for summary judgment. (Dkt. 71.) The Court concluded that Plaintiff's document requests were not unenforceable because of their untimely service and ordered the parties to propose a schedule, which the Court later adopted. Under that schedule, if the Court grants Plaintiff's motion to compel (in whole or part), Plaintiff's opposition to summary judgment would be due after Defendant produces further responses, at a time to be determined. If the Court denies the motion to compel,

3

Plaintiff's opposition to summary judgment would be due seventeen days after the Court's denial of the motion. On February 28, 2014, the Court granted Defendant's motion to vacate the pretrial conference and trial dates pending a decision on the motion to compel.

**II.     Discussion**

Plaintiff moves to compel further responses to Request for Production Nos. ("RFPs") 1, 2, 3, 4, 5, 7, 8, 9, 10, 21, and 22. In general, these requests are overbroad, seek discovery that is disproportionate to the scope of this case, and unduly impinge on the privacy interests of third parties. The Court therefore denies Plaintiff's motion to compel with respect to all RFPs except RFP 5. As to RFP 5, the Court grants Plaintiff's motion to compel to a limited extent and orders Defendant to produce a list of the names of Plaintiff's crew members.

A.     RFP 1

Plaintiff requests "[a]ll documents, electronically-stored information, and tangible things evidencing the total number of Enumerators under the supervision, in 2010, of Crew Chief Crystal Korbas, Pleasanton LCO (2719), Seattle RCC, who were terminated in April or May of 2010." In response, Defendant produced a list of enumerators that worked in Crew Leader Crystal Korbas' crew during the Non Responsive Follow Up (NRFU) Operation of the 2010 Decennial Census. This list includes the end date for each enumerator's employment. According to Defendant, this document shows that Plaintiff was the only enumerator under Crew Leader Korbas who was terminated during April or May 2010. Plaintiff argues that because the names in this document were redacted, he cannot verify whether the list actually corresponds to his crew members. In light of the redaction, which the Court believes is appropriate to protective the privacy interests of third parties, the Court orders Defendant to produce a sworn declaration authenticating the list as what it has been represented to be.

B.     RFP 2

Plaintiff requests "[a]ll documents, electronically-stored information, and tangible things evidencing or pertaining to the beginning of, end of, and changes in the status of employment of all Enumerators under the supervision, in 2010, of Crew Chief Crystal Korbas, Pleasanton LCO (2719), Seattle RCC, including but not limited to copies of every Notification of Personnel Action issued by

4

Defendant to said Enumerators. These should include copies of each such Notification of Personnel Action issued at the commencement of employment with the Census Bureau, copies of each such Notification of Personnel Action issued at the end of employment with the Census Bureau, and copies of every other Notification of Personnel Action that was issued to any of the aforementioned Enumerators."

In response to this request, Defendant directed Plaintiff to the redacted list of enumerators discussed above. Plaintiff again argues that the redaction prevents him from confirming whether the document refers to his fellow crew members or instead other enumerators in Pleasanton. Plaintiff's request for "all documents" pertaining to the change in status of his fellow crew members is overbroad, as is his request to each Notification of Personnel Action. The list produced by Defendant is sufficient as long as Defendant produces an appropriate declaration.

C.     RFP 3

Plaintiff requests "[a]ll documents, electronically-stored information, and tangible things evidencing the citizenship status and national origin of all Enumerators under the supervision, in 2010, of Crew Chief Crystal Korbas, Pleasanton LCO (2719), Seattle RCC, including but not limited to copies of each and every record in the possession of Defendant indicating that any of the aforementioned Enumerators were of national origin other than U.S. national origin."

According to Defendant, Plaintiff's crew members identified themselves as United States citizens, and, as a consequence, no further citizenship information was requested from them. (Liquorie Decl. 1-2, Ex. A.) Defendant also noted that it does not request or maintain national origin information, though it does allow employees to voluntarily report race and ethnicity data. (Shipley Decl. ¶¶ 3.4.) Defendant provided this race and ethnicity data for Plaintiff's crew members but redacted their names.

Plaintiff argues that this response is insufficient because in order for him to prove national origin discrimination, he needs evidence of the national origin of every enumerator under the supervision of Crew Leader Korbas in 2010. Plaintiff contends that although Defendant might not have information that directly indicates national origin, he is entitled to information that might indirectly indicate the national origin of his fellow crew members, such as information regarding the

5

full name, place of birth, physical characteristics, and languages spoken by the crew members.

The Court denies Plaintiff's motion to compel as to this request. Defendant has provided the citizenship and national origin information in its possession. The additional information sought by Plaintiff is at best tangentially relevant to national origin, and the limited relevance of the information is outweighed by the burden to Defendant of collecting this information.

D.    RFP 4

Plaintiff requests: [a]ll documents, electronically-stored information, and tangible things describing, mentioning, relating to, referring to, bearing upon, or providing evidence bearing on any prior criminal charges, dispositions, and prior arrests for every Enumerator under the supervision, in 2010, of Crew Chief Crystal Korbas, Pleasanton LCO (2713), Seattle RCC, including, without limitation, copies of the complete Application Responses to Criminal History Question (OF-306) for every said Enumerator, copies of every record in possession of Defendant generated during the background check conducted for each and every said Enumerator, and copies of every record in possession of Defendant indicating the outcome of the background check conducted for every said Enumerator, except you need not produce any documents that are found within the Department of Commerce, U.S. Census Bureau, Equal Employment Opportunity Report of investigation Number 10-63-02500D relating to Complainant Matthew A.I. Ua Cruadhlaoich, Agency's Motion for Summary Judgment (December, 2011), and the EEOC Administrative Judge Decision (January 13, 2012)."

In response to this request, Defendant submitted the supplemental declaration of Sandra Patterson, Assistant Division Chief of the CHEC Office. Patterson reviewed the criminal record and final Decennial Census criminal background investigation results for Plaintiff's crew members and averred that "none of the 18 employees that the Agency identified as being in the same crew as the Plaintiff had a criminal record that included a charge of Assault and Battery or Assault and Battery of a Police Officer." (Supp. Patterson Decl. ¶ 3.) Plaintiff argues that this response is insufficient because it only relates to those charged with assault and battery and does not indicate whether anyone was place on probation. Plaintiff also argues that he needs such information to determine whether the eligibility criteria were applied inconsistently or as a pretext. Finally, Plaintiff argues

6

that Patterson is biased because his lawsuit involves Defendant's CHEC Office. According to Plaintiff, since Patterson has already reviewed the documents, it would not be unduly burdensome for Defendant to produce them.

Plaintiff's arguments are unpersuasive, and the Court denies Plaintiff's motion to compel as to this request. Defendant supplied information sufficient to show that none of Plaintiff's crew members were charged with the relevant crime -- assault and battery. Plaintiff has not established that being placed on probation for some other crime is sufficiently relevant to this lawsuit to authorize such overbroad discovery into the private information of third parties. Additionally, Plaintiff provided no basis to substantiate his fear of bias by the sworn declarant.

E.   RFP 5

Plaintiff requests: "[a]ll documents and electronically-stored information in the possession of Defendant that mention the names of any of the Enumerators under the supervision, in 2010, of Crew Chief Crystal Korbas, Pleasanton LCO (2719), Seattle RCC, including but not limited to Plaintiff, Angela Coleman, Bertha Martinson, Brenden Lau, Chen Lee Manns, Deborah Lien, Ed August, Elizabeth Garcia-O'Gorman, Forrest Lee, Janelle Bentley, Mark Johnson, Melani Gella, Meta Ramee-McAulay, Patricia Simmons, Sakirat Shittu, Susan Chambers, Susan Zima, Tiffany Jackson, and any likewise-positioned Enumerator with the given name Michelle, except you need not produce any documents that are found within the Department of Commerce, U.S. Census Bureau, Equal Employment Opportunity Report of lnvestigation Number 10-63-02500D relating to Complainant Matthew A.I. Ua Cruadhlaoich, Agency's Motion for Summary Judgment (December 7, 2011), and the EEOC Administrative Judge Decision (January 13, 2012)."

Defendant did not produce any documents responsive to this request other than the redacted list produced in response to RFPs 1 and 2 and the supplemental Patterson declaration. Plaintiff again argues that he cannot verify that the document provided in response to RFPs 1 and 2 is what Defendant says it is, and he believes that Patterson is biased. He argues that given that Patterson has already reviewed the crew members' criminal background records, it would not be unduly burdensome for Defendant "to produce this primary evidence rather than a substituted statement." (Pl.'s Mot. at 7.)

7

1 The Court grants in part Plaintiff's motion to compel and orders Defendant to produce a list
2 of the names of Plaintiff's fellow enumerators.  Although it appears Plaintiff has most if not all of
3 the names, there is no indication that it would be unduly burdensome for Defendant to produce this
4 information or that production of names would unduly violate privacy interests.  The Court
5 otherwise denies Plaintiff's motion to compel as to this RFP.  The request is overbroad as it seeks
6 every document that mentions the name of every one of Plaintiff's crew members.  Plaintiff has not
7 justified discovery of that scope.

F. RFP 7

Plaintiff requests "[a]ll documents describing, mentioning, relating to, referring to, bearing upon, or providing evidence bearing on (1) any performance review of, test results from, disciplinary action involving, demotion of, termination of, probation of, or like action taken with respect to Defendant's witness Jessica Simmons during her period of employment with the United States Department of Commerce, (2) any and all litigation or other proceedings, including but not limited to those before an administrative agency or a branch of the court system, involving said witness during said period, and (3) receipt by said witness during said period of any earnings, benefits, or other income of any kind as compensation for providing witness statements." This request seeks information regarding the credibility of Jessica Simpson, who signed two declarations during the EEO proceedings.

Defendant responded to this request by stating, after obtaining Simmons's limited consent, that it was unaware of any records of discipline for Simmons relating to her employment with the Census Bureau and that it was unaware of any records related to her being compensated for providing witness statements.  Defendant objected to producing records of other litigations and proceedings.  Plaintiff argues that he needs credibility information because the alleged legitimate reason for his termination was based on Simmon's declaration and because he believes she made "counterfactual" statements.

The Court denies Plaintiff's motion as to this request.  Although Defendant's summary judgment motion mentions Simmons's declaration as background, Defendant does not rely on her declaration or her testimony.

8

G.     RFP 8

Plaintiff requests "[a]ll documents, electronically-stored information, and tangible things mentioning, relating to, referring to, or providing evidence of the number of CHEC Office staff who worked for the United States Census Bureau during the period from March 2009 through May 2010, inclusive, including information about the numerical distribution of said staff by office, location, and responsibility."  In response to this request, Defendant directed Plaintiff to the Patterson declarations, which named the CHEC staff members who made the decisions regarding Plaintiff's background investigations in 2009 and 2010.  (Patterson Decl. ¶ 23; Supp. Patterson Decl. ¶ 5.) Patterson also averred that those who made the ineligibility determination in 2010 were located in Maryland and that telephone calls from applicants such as Plaintiff regarding background checks were routed to the Census Bureau's Arizona call center.  (Patterson Decl. ¶ 23.)  Patterson averred that the CHEC personnel involved in Plaintiff's second background investigation did not answer telephone calls from applicants or employees regarding the status of background investigations. (Id.)  Plaintiff argues that he needs evidence on the basic structure and staffing of the CHEC Office to evaluate Defendant's claim that there was no overlap between the CHEC staff members who interacted with plaintiff and those who made the eligibility determinations.

The Court denies Plaintiff's motion to compel as to this overbroad request because Defendant provided Plaintiff with information regarding the CHEC staff members relevant to his case.  Further, Plaintiff does not explain how the numerical distribution of CHEC staff members is relevant to overlap.

H.     RFP 9

Plaintiff requests "[a]ll documents, electronically-stored information, and tangible things mentioning, relating to, referring to, or providing evidence of the names and responsibilities of CHEC Office staff who worked for the United States Census Bureau during the period from March 2009 through May 2010, inclusive, including information about the offices, locations, and responsibilities of said staff members."

The Court denies Plaintiff's motion to compel as to this request for the same reasons it

9

denies it with respect to RFP 8. Plaintiff's RFP is far too broad in that it seeks discovery about all CHEC staff members, and Defendant has produced the names and locations of the CHEC staff members who determined that Plaintiff was ineligible for employment.

### I. RFP 10

Plaintiff requests "[a]ll documents containing logs, notations, transcripts, and any other records of telephone conversations between Plaintiff and the CHEC Office from March 2009 through May 2010, inclusive." Defendant produced two redacted pages from a spreadsheet that documents two calls from Plaintiff to the CHEC Office. (Pl.'s Mot. Ex. 1, Attach.) Defendant also responded that there was no uniform method for documenting calls to the CHEC Office during May 2009 to May 2010, and that it had six boxes of call center notes that were not well organized and that were estimated to contain thousands of telephone notes.

Plaintiff argues that these notes could contain pivotal evidence of discrimination and retaliation and that he has limited his request to the calls he made. Defendant maintains that it does not dispute that Plaintiff called the CHEC Office and that searching through the boxes would be unduly burdensome given the evidence that the CHEC staff members who made the ineligibility determination were not involved with phone calls.

The Court denies Plaintiff's motion as to this request. Requiring Defendant to search through thousands of notes from 2010 would be unduly burdensome and disproportionate in light of the information Defendant already produced.

### J. RFP 21

Plaintiff requests "[a]ll documents, electronically-stored information, and tangible things evidencing or pertaining to the beginning of, end of, and changes in the status of employment of all Enumerators found by Defendant from March 30, 2010 through December 31, 2010, inclusive, to have been charged with assault the battery on a police officer, including but not limited to copies of each and every Notification of Personnel Action issued by Defendant to said Enumerators. These should include copies of each such Notification of Personnel Action issued at the commencement of employment with the Census Bureau, copies of each such Notification of Personnel Action issued at the end of employment with the Census Bureau, and copies of every other Notification of Personnel

10

1  Action that was issued to any of the aforementioned Enumerators."

2  Defendant responded to this request by directing Plaintiff to the supplemental Patterson
3  declaration. Patterson reviewed the records of approximately 366 employees and applicants that
4  worked in, or applied to work in, the Pleasanton Local Census Office and who the FBI identified as
5  having a tentative match with a criminal history record. (Patterson Decl. ¶ 4.) Patterson averred that
6  "she did not identify a single employee that was hired and retained to work in the Pleasanton LCO
7  after their background check was completed, whose record included a conviction for assault and
8  battery of a police officer, or 'proof the person engaged in conduct related to' assault and battery of
9  a police officer such as a disposition which included 'probation before judgment (PBJ), probation, or
10 deferred adjudication (even if the outcome was dismissal).'" (Supp. Patterson Decl. ¶ 4.)

11  Plaintiff argues that this is not responsive because he sought information about those who
12 were charged with assault and battery on a police officer, not those convicted. According to
13 Plaintiff, the Patterson declaration is irrelevant because he was never convicted of assault and
14 battery on a police officer. Defendant counters that whether or not Plaintiff was convicted, CHEC
15 staff members found him ineligible because they interpreted the criminal docket form as showing
16 that: (a) he was on probation for assault and battery of a police officer and (a) there was proof that
17 he engaged in such conduct. The apt comparison, Defendant argues, is not between Plaintiff and
18 those who were charged with assault and battery on a police officer, but between Plaintiff and those
19 who were on probation for such a charge or who were found to have committed assault and battery
20 of a police officer.

21  The Court denies Plaintiff's motion to compel as to this request. The request is overbroad on
22 its face, as it seeks information nationwide. Moreover, it was appropriate for Patterson to limit her
23 inquiry as she did.

24  K.   RFP 22

25  Plaintiff requests "[a]ll documents, electronically-stored information, and tangible things
26 evidencing or pertaining to the citizenship status and national origin of all Enumerators found by
27 Defendant from March 30, 2010 through December 31, 2010, inclusive, to have been charged with
28 assault and battery on a police officer, including but not limited to copies of each and every record in

11

the possession of Defendant indicating that any of the aforementioned Enumerators were of national origin other than U.S. national origin."

Defendant responded to this request by directing Plaintiff to the supplemental Patterson declaration and noting that Defendant does not collect or retain information on the national origin of its employees. Plaintiff asserts that even if the Census Bureau does not record national origin information, Defendant should produce information about the physical characteristics, language, and place of birth of those charged with assault and battery of a police officer.

The Court denies Plaintiff's motion to compel as to this request, which seeks national origin information regarding those individuals falling within the ambit of RFP 21. There are no such individuals, and Defendant does not maintain national origin information in any event.

### III.   Conclusion

The Court grants in part and denies in part Plaintiff's motion to compel.

**IT IS SO ORDERED.**

Dated: March 12, 2014

ELIZABETH D. LAPORTE
United States Chief Magistrate Judge